UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| **NORTH JERSEY CENTER FOR SURGERY, P.A. et al.,** | Civil Action No.: 07-4812 (HAA) |
| | REPORT AND RECOMMENDATION |
| Plaintiffs, | |
| v. | |
| **HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.,** | |
| Defendant. | |

**SALAS, United States Magistrate Judge**

Before the Court is Plaintiff North Jersey Center for Surgery, P.A.'s ("NJCS") motion to remand (Docket Entry No. 4). Pursuant to Local Civil Rule 72.1(a)(2), The Honorable Harold A. Ackerman, United States District Judge, has referred the motion to the Undersigned for Report and Recommendation. For the reasons set forth below, the Undersigned recommends granting NJCS's motion.

## I. BACKGROUND

This case arises out of Defendant Horizon Blue Cross Blue Shield of New Jersey, Inc.'s ("Horizon") alleged failure to fully reimburse NJCS for medical services it provided to patients insured by Horizon.[1] (Def. Opp. Br. at 1). NJCS is a professional corporation that owns and operates a single-room surgical center. (Complaint ¶ 1.) Horizon is a non-profit health services

---

[1] For clarity, the individuals allegedly assigned their benefits to NJCS will be referred to as the "Horizon subscribers."

corporation that provides health coverage and benefits to subscribers who receive health care benefits pursuant to the New Jersey State Health Benefits Plan ("NJSHBP") and Small Employer Health Benefit Plans ("SEHBP").  (Def. Opp. Br. at 1-2.)  Horizon contracts directly with various health care providers and establishes a network of doctors that agree to be reimbursed at a reduced rate in return for a volume of patient referrals.  (Complaint ¶ 10.)  This network of providers are typically referred to as "participating" or "in-network" providers.  (*Id*.)  In addition, Horizon also reimburses providers who do not directly contract with Horizon.  (*Id*. ¶ 11.)  These providers are typically referred to as "non-participating" or "out-of-network" providers.  (*Id*.)  NJCS is an out-of-network provider of medical services.  (*Id*.)

According to NJCS, it provided health care services to many Horizon subscribers.  (*Id*. ¶ 16.)  Each time services were provided, NJCS and the individual would enter into a contract wherein the individual would assign their rights under the contract of health insurance with Horizon to NJCS, who would in turn bill Horizon for the services and would receive reimbursement from Horizon.  (*Id*. ¶¶ 13, 19.)  NJCS argues that these contracts created a privity of contract between NJCS and Horizon as an assignee of the patient's contract with Horizon.  (*Id*. ¶ 13).  NJCS argues that Horizon did not fully reimburse NJCS for the services it provided to the Horizon subscribers.  (*See generally* Complaint.)

On August 22, 2007, NJCS filed a six-count complaint[2] in New Jersey state court claiming that Horizon improperly denied NJCS full payments due under the assignments.  NJCS's complaint asserts the following claims: (1) breach of contract; (2) breach of good faith

---

[2]NJCS's complaint was not correctly numbered.  The complaint contains two "Count Four(s)" and did not contain a sixth count.  For the purposes of clarity, the Court refers to the second count four as Count Five and the original count five as Count Six.

and fair dealing/bad faith; (3) tortious interference with prospective economic advantage; (4) interference with contract; (5) interest on overdue claims pursuant to N.J.S.A §17B:26-9.1; and (6) improperly setting reimbursement as a percentage of Medicare rates in violation of N.J.S.A. §17B:30-13.1(f). On October 4, 2007, Horizon removed this action to federal court arguing that NJCS's claims fall under the Employee Retirement Income Security Act's ("ERISA") civil enforcement provision, section 502(a), 29 U.S.C. § 1132(a), because NJCS brought this action to receive benefits as an assignee and/or third-party beneficiary of ERISA benefits plans. (Def. Opp. Br. at 4.)

## II. DISCUSSION

A civil action filed in state court may be removed to federal court if the claim is one that arises under federal law. 28 U.S.C. § 1331. "The 'well-plead complaint rule' is the basic principle marking the boundaries of federal question jurisdiction of the federal district court." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-12 (1983)). It is only when the plaintiff's "well-pleaded" complaint raises issues of federal law on its face that the action properly "arises under" federal law and subjects it to federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 10. The defense of federal preemption generally does not appear on the face of the complaint and therefore does not authorize removal to federal court. *Metropolitan Life Ins. Co.* 481 U.S. at 63.

The removing party must show that federal subject matter jurisdiction exists and that removal is proper. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990). Removal statutes are strictly construed against removal, and all doubts should be resolved in favor of

remand. *Entrekin v. Fisher Schientific Inc.*, 146 F.Supp.2d 594, 604 (D.N.J. 2001).

Here, NJCS's complaint does not on its face present a federal question. NJCS pleads only state common law and statutory claims that do not reference federal laws or issues. Therefore, under the "well-pleaded" complaint rule, NJCS's complaint does not confer federal jurisdiction. However, Horizon argues that although NJCS does not specifically plead issues of federal law, NJCS's claims fall under ERISA's civil enforcement mechanism which completely preempts the claims and creates federal jurisdiction.

An exception to the "well-pleaded complaint" rule is the doctrine of complete preemption. *Lazorko et al. v. Pennsylvania Hospital et al.*, 237 F.3d 242, 248 (3d Cir. 2000). Complete preemption[3] states that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63-64. The complete preemption doctrine therefore transforms a state law cause of action into a federal cause of action that can be properly brought in federal court. *King v. Marriott International, Inc. et al.*, 337 F.3d 421, 425 (4th Cir. 2003) (citing *Metropolitan Life*, 481 U.S. at 63-64). Complete preemption creates removal jurisdiction even

---

[3] It should be noted that the doctrine of complete preemption differs from express preemption (also known as substantive preemption). Express preemption, § 514, 29 U.S.C. § 1144, states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." This provision displaces any state law claims that are related to ERISA plans, but it does not confer federal jurisdiction. *Lazorko*, 237 F.3d at 248. Express preemption merely governs the law that will apply to the state law claims and is generally only raised as a defense. *Id.* Complete preemption, on the other hand, is a jurisdictional vehicle that creates a basis for removal to federal court anytime the claim falls within the ambit of § 502. *Id*.

though on the face of the complaint no federal question appears. *Lazorko*, 237 F.3d at 248.

ERISA's civil enforcement provision falls within the doctrine of complete preemption. *Metropolitan Life*, 481 U.S. at 62; *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir. 2001). As the Supreme Court stated in *Aetna Health Inc. v. Davila*, "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" 542 U.S. 200, 209 (2004) (quoting *Metropolitan Life,* 481 U.S. at 65-66). Claims falling under § 502(a) are in reality based on federal law. *Id*. at 208. Therefore, any cause of action that comes within the scope of § 502(a) is removable to federal court. *Id*. at 209.

For a claim to be completely preempted under § 502(a) and subject to removal, the Third Circuit requires two elements: (1) the plaintiff could have brought the claim under § 502(a); and (2) "no other legal duty supports [the] claim." *Pascack Valley Hospital, Inc. v. Local 464A UCFW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). Both requirements must be met in order for the claim to be completely preempted. *Engle v. Milton Hershey School*, No. 06-0109, 2007 WL 1365916, at * 4 (M.D.Pa. Jan. 19, 2007).

The Court will now turn to the first prong of the *Pascack Valley* test.

**A.      Could NJCS Have Brought its Claim Under Section 502(a)?**

Horizon argues that NJCS's claims fall under § 502(a) and are subject to removal because the remedies NJCS seeks (benefits owed under the plans) are exclusive remedies due under

ERISA.[4]  Under § 502(a), only a participant or beneficiary may bring a suit to recover benefits due to them under an ERISA plan.  29 U.S.C. § 1132(a).  It is clear, and not disputed, that NJCS is not participant or beneficiary of an ERISA plan and therefore, on its own, does not have standing to bring suit.  *Pascack Valley Hospital*, 388 F.3d at 400.  However, Horizon argues that as an assignee of a plan participant (the Horizon subscribers), NJCS would have derivative standing to sue under § 502(a).

The Third Circuit has not definitely ruled on the issue of derivative standing.  *Id*. at 401.  In *Pascack Valley Hospital*, the issue facing the Third Circuit was whether the plaintiff (a hospital) could sue the defendant (the ERISA benefits plan) for failing to reimburse the plaintiff for services the plaintiff provided to two subscribers under the ERISA plan.  *Id.* at 396-398.  The court ultimately declined to address the larger issue of whether the Hospital would have derivative standing to bring the suit because the court found that the Hospital could not have standing because no assignment had occurred.  *Id*. at 400.  However, the court did acknowledge that almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under § 502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan.  *Id*. at 401; *see also Tango Transport v. Healthcare Fin. Servs.*, 322 F.3d 888 (5th Cir. 2003).  Since *Pascack Valley Hospital*, district courts have interpreted it as an indirect affirmation of derivative standing for health care providers.  *See, e.g.,*

---

[4]Both the NJSHBP and SEHBP are employee benefit plans that are maintained by the employers and are governed by ERISA.  See 29 U.S.C. § 1002 (1) & (5), 29 U.S.C. § 1002(16)(B) and  N.J.S.A. 17B:27A-17 for details on ERISA plans.  See also Exhibit A to Horizon's Motion to Dismiss (Docket Entry No. 2) (plan document that provides the subscribers with a "Statement of ERISA Rights" and identifies the employer as the "plan sponsor" under ERISA).

*Wayne Surgical Center, LLC v. Concentra Preferred Systems, Inc.*, No. 06-928, 2007 WL 2416428 (D.N.J. Aug. 20, 2007) (finding that a healthcare provider has standing to sue under ERISA as a valid assignee).

As the party asserting federal jurisdiction, Horizon has the burden of proving that NJCS's claims are ERISA claims, and in this case, that requires Horizon to prove the existence of a valid assignment. *Pascack Valley Hospital*, 388 F.3d at 401. In the absence of proof of an express valid assignment, NJCS would not have standing to bring the claims and therefore this matter would be remanded. *Id*.; *Community Medical Center v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed.Appx 433, 436 (3d Cir.2005) (finding that "failure to establish that an appropriate assignment exists is fatal to standing"); *Hobbs v. Blue Cross Blue Shield of Alabamba*, 276 F.3d 1236, 1242 (11th Cir. 2001) (stating, "[w]ithout proof of an assignment, the derivative standing doctrine does not apply"); *Board of Trustees v. Doctors Medical Center of Modesto, Inc. et al.*, No. 07-1740, 2007 WL 2385097, at * 5 (N.D.Cal. Aug. 17, 2007) (same).

Neither party has provided proof that any of the individuals to whom NJCS provided care did in fact assign their Horizon health plan rights to NJCS. To sustain federal jurisdiction based on derivative standing, Horizon would have to provide evidence of a valid executed assignment by a plan participant. *Community Medical Center*, 143 Fed.Appx. at 435. Without proof of the assignment the Court is unable to determine the scope of assignment and hence determine whether there is federal jurisdiction. *Id*; s*ee also Tenet Healthsystems Hospitals, Inc. v. Coventry Health Care of Louisiana, Inc.*, No. 07-5270, 2008 WL 160941, at * 4 n.2 (E.D.La. Jan. 15, 2008). The scope of the assignment is essential to establishing derivative standing as courts have made distinctions between assignments that only give the provider the right to reimbursement for

medical services–which are not ERISA claims–and assignments that give the provider a full assignment of benefits, which are ERISA claims. *Cooper Hospital Medical Center v. Seafarers Health and Benefits Plan*, No. 05-5941, 2007 WL 2793372, at * 3 (D.N.J. Sept. 25, 2007) (finding that assignment only allowed the hospital to receive payments from the defendant and to pursue the available appeals processes and not to pursue litigation based on the refusal to pay charges and therefore did not constitute a full assignment of benefits); *Touro Infirmary v. American Maritime Officer*, No. 07-1441, 2007 WL 4181506, at * 3-6 (E.D.La. Nov. 21, 2007) (finding that the assignment was only an assignment of right to receive payment, not a full assignment of benefits, and therefore plaintiff did not have standing to sue).

      Here, the Court is unable to determine the scope of the purported assignments to decide whether the plan participants assigned their full benefits to NJCS or only their right for reimbursement.  Horizon has not provided any documentation that establishes what type of assignment was made by the Horizon subscribers to NJCS.  In fact, the only description of the assignment is in NJCS's complaint which states that the "patients assign their rights under their contracts of health insurance with Horizon" to NJCS.  (Complaint ¶ 13).  This vague language does not indicate to the Court with any clarity the type of assignment that was purportedly made. Without a full understanding of the scope of the assignments, this Court is not in a position to find federal jurisdiction of this matter. *Community Medical Center*, 143 Fed.Appx. at 436.

      Because Horizon bears the burden of establishing federal jurisdiction, Horizon must provide the Court with sufficient proof that the Horizon subscribers executed valid assignments. In that regard, the Court finds that Horizon has failed to satisfy its burden. *Id*. (as the Third Circuit has recognized, "failure to establish that an appropriate assignment exists is fatal to

standing").[5]  Accordingly, this Court finds that Horizon has not successfully argued the first prong of the *Pascack Valley* test and declines to address the second prong.

### III. CONCLUSION

For the reasons set forth above, the Undersigned recommends that the District Court **GRANT** Plaintiff's motion to remand.  Pursuant to Local Civil Rule 72.1, the parties have ten days from receipt of this Report and Recommendation to file and serve any objections.

                                        s/ Esther Salas
                                        **ESTHER SALAS**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[5]Assuming *arguendo* that Horizon could provide proof of executed assignments that fall within ERISA's civil enforcement provision, NJCS may nevertheless still not have standing as the plan participants' contracts with Horizon may contain an anti-assignment provision.  Courts in this district have held that an anti-assignment provision will preclude a healthcare provider from having standing.  *Briglia v. Horizon Healthcare Services, Inc.*, 2005 WL 1140687, at *10 (D.N.J. May 13, 2005) (dismissing claims because plan disallowed assignment of benefits); *Temple University Hospital, Inc. v. Group Health, Inc.*, No. 05-102, 2006 WL 1997424, at * 10 (E.D.Pa. July 13, 2006) (same); *Lehigh Valley Hospital v. UAW Local 259 Social Security Department*, No. 98-4116, 1999 WL 600539, at * 3 (E.D.Pa. Aug. 10, 1999) (same).  If the healthcare plans between the participants and Horizon contain anti-assignment clauses then NJCS would not have standing.  Horizon has not provided, in connection with this motion, the plan contracts which would show whether the Horizon subscribers could or could not assign their rights under the plans.  Therefore this Court does not render an opinion on the issue.